UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RODERICK CLAY WILLIAMS | ) | CASE NO. 1:13CV863 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Roderick Clay Williams Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his February 24, 2012 decision in finding that Plaintiff was not disabled because he retained the capacity to perform a reduced range of light work that accounted for credible limitations resulting from the impairments (Tr. 16 Finding No. 5). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.      PROCEDURAL HISTORY**

Plaintiff, Roderick Clay Williams, filed his application for DIB and SSI on June 8, 2010, alleging he became disabled on June 10, 2009 (Tr. 156-157). Plaintiff's application was denied initially and on reconsideration (Tr. 85-91, 97-110). Plaintiff requested a hearing before an ALJ, and,

on January 13, 2012, a hearing was held, where Plaintiff appeared with counsel and testified before an ALJ, and Mark Anderson, a vocational expert, also testified.

On February 24, 2012, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 9-26). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g) and 1383(c)(3).

## II. STATEMENT OF FACTS

Plaintiff was born on June 29, 1959, which made him forty-nine years old when the ALJ denied his request for DIB and SSI. Plaintiff has a limited education and can communicate in English. He has not engaged in substantial employment since June 10, 2009 (Tr. 74, 81).

## III. SUMMARY OF MEDICAL EVIDENCE

Plaintiff was diagnosed with carpal tunnel syndrome in late March 2010 – moderate on the right extremity, and mild on the left (Tr. 351). In August 2010, Plaintiff underwent a consultative examination by Kimberly Togliatti-Trickett, M.D. of Independence Sports Medicine and Spine Center (Tr. 275-81). Manual muscle testing showed that Plaintiff had normal wrist and finger movement/strength, as well as normal grasp, manipulation, pinch, and coordination of the left and right hands (Tr. 275, 277). Plaintiff reported numbness of his hands and feet (Tr. 279-80). Examination of his hands and wrists did not reveal any joint erythema, effusion, tenderness, or abnormalities (Tr. 280). Plaintiff had normal sensation with light touch and pin prick, except for over the right fifth digit and distally at the tips of the toes (Tr. 280). Dr. Togliatti-Trickett opined that

Plaintiff should be able to lift and carry objects up to forty pounds on occasion, without difficulty (Tr. 281). She stated that Plaintiff would have difficulty with handling objects, due to his report of pain in the hands and wrists bilaterally (Tr. 281).

State agency physician, Gerald Klyop, M.D. reviewed Plaintiff's medical evidence in September 2010 (Tr. 55-60). While he determined that Plaintiff's carpal tunnel syndrome was a severe impairment (Tr. 55), he stated that Plaintiff had unlimited ability with respect to fine and gross manipulation (Tr. 57). The only manipulative limitation that resulted from Plaintiff's severe carpal tunnel syndrome concerned "feeling (skin receptors)," which Dr. Klyop found was limited on the right (Tr. 57). Dr. Klyop concluded that Plaintiff had "some mild numbness in [his] right fifth finger," but that his ability to grasp and handle objects was within normal limits (Tr. 60). W. Jerry McCloud, M.D. affirmed Dr. Klyop's opinion regarding Plaintiff's lack of any non-sensory manipulative limitations in March 2011 (Tr. 68-69, 71-72, 78-79, 81-82).

The record also shows that Plaintiff treated with family physician, Daniel L. Turner, D.O., for his overall care. Plaintiff sought an examination in mid-January 2010 because of a headache (Tr. 327), and later that month he again saw Dr. Turner, this time because he had been having night sweats (Tr. 321). In early August 2010, Plaintiff sought an examination due to flea bites (Tr. 317). Then, in late September 2010, Plaintiff reported that he had foot numbness and a skin rash (Tr. 310).

Plaintiff reported feeling well at his next examination with Dr. Turner in late October 2010, although he did have some digestive concerns (Tr.307). At Plaintiff's annual physical examination in mid-January 2011, he told Dr. Turner that he felt "well in general," but had calf pain when walking (Tr. 300). His past surgical history was reported as "6/10/10 (Right carpal tunnel release)" (Tr. 301). Plaintiff denied having any joint pain (Tr. 302). When Plaintiff next saw Dr. Turner in early February 2011, he reported bilateral hand pain and numbness, and was assessed as having carpal tunnel

3

syndrome (Tr. 296-97). In late March 2011, Plaintiff did not report any hand/wrist pain – only hip pain and toe joint pain (Tr. 290-92). In April 2011, Plaintiff reported to Dr. Turner that he had left-sided flank pain; calf, hip, and foot pain; and muscle spasms (Tr. 285). Dr. Turner made no notation of Plaintiff complaining of pain or numbness in his hands (Tr. 285). On examination, Plaintiff denied "weakness, numbness or tingling" (Tr. 285). Dr. Turner emphasized Plaintiff's need for weight loss and exercise (Tr. 286).

Plaintiff was thereafter seen by Rochelle Rosian, M.D. In early 2012, Plaintiff had a follow-up appointment for joint pain with Dr. Rosian, who ordered wrist splints (Tr. 337). Plaintiff reported that he would wake up in the night with a numb right hand (Tr. 339). On examination, Plaintiff had no wrist swelling or tenderness (Tr. 340).

## IV. SUMMARY OF TESTIMONY AND OTHER STATEMENTS OF RECORD

In regard to daily activities, Plaintiff stated that he sometimes washed dishes and cleaned the house until his legs got restless (Tr. 201). He reported that his condition did not interfere with his ability to engage in self-care (dressing, bathing, shaving/hair care, eating) (Tr. 202). He was also able to prepare meals (Tr. 202).

When Plaintiff met in person with an agency claims representative in June 2010, he reported that his "carpal tunnel was so bad that it would probably kill him" (Tr. 181). The claims representative told Plaintiff that she also had carpal tunnel and did not know that carpal tunnel could be fatal, whereupon Plaintiff stated that his was much worse than hers (Tr. 181).

At the January 13, 2012 administrative hearing, Plaintiff testified that his right hand was numb and rendered him unable to work (Tr. 38-39). He had surgery, but it did not work (Tr. 39). He stated

4

that his doctor indicated she would give him a brace to wear, but he believes she forgot to give it to him (Tr. 40). Upon questioning by Plaintiff's counsel, Plaintiff testified that both of his hands were problematic, but that his right hand was worse (Tr. 42). He reported that his right hand would start getting numb after fifteen to twenty minutes of sweeping (Tr. 42).

A vocational expert also testified at the administrative hearing (Tr. 44-50). The Administrative Law Judge posed hypothetical questions to the vocational expert, such as, to assume an individual of the same age, education, and past work experience as Plaintiff, who was able to perform a limited range of light work, as he could lift twenty pounds occasionally and ten pounds frequently, but was unable to operate foot controls, and who could stand or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday, but who could not climb ladders or scaffolds, and who could only occasionally climb stair or ramps, with no kneeling or crawling, and no driving (Tr. 49).

In response, the vocational expert testified that an individual with that vocational profile could perform the jobs of inspector, hand packager, and assembler of electrical devices, in response to the first hypothetical (Tr. 48-49).

The first hypothetical question had set forth the ability to perform a full range of light work with the same non-exertional limitations that were repeated in the second question (Tr. 48-49). The vocational expert explained that these jobs allowed for a sit/stand option (Tr. 48-49). The vocational expert further testified that these jobs existed in significant numbers in the regional and national economies, and that they represented just a sample of possible jobs (Tr. 48-49).

### **V.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to

disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. 404.1520(d)  and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f) and  416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

**VI.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes

a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII.** **ANALYSIS**

Plaintiff raises two issues:

A. Whether the Administrative Law Judge erred in failing to apply Medical-Vocational Guideline 201.10, which directs a finding of disability since the Administrative Law Judge found that the claimant was capable of standing and/or walking only two hours in an eight-hour day.

B. Whether the Administrative Law Judge erred in failing to find that claimant's carpal tunnel syndrome is a severe impairment and failing to include any limitations resulting from carpal tunnel syndrome in the residual functional capacity findings.

Plaintiff's first argument concerns the Administrative Law Judge's use of the Medical-

Vocational Guidelines (Grid Rules) given Plaintiff's RFC (Pl.'s Br. at 9-10). The Administrative Law Judge determined that Plaintiff retained the capacity to perform light work that involved lifting twenty pounds occasionally and ten pounds frequently; standing/walking for two hours in an eight-hour workday; sitting for six hours in an eight-hour workday; no operation of foot controls; no climbing ladders/scaffolds; no kneeling; no crawling; only occasional stair climbing; and no commercial driving (Tr. 16, Finding No. 5). This RFC is less than a full range of light work, but greater than sedentary work. Plaintiff contends that the Administrative Law Judge should have used the sedentary grid rules because the RFC finding reflects fewer hours of walking/standing than a full range of light work (Pl.'s Br. at 9). However, Plaintiff's argument is in error because Plaintiff's RFC is not at the level of sedentary work, due to the greater lifting requirements; therefore, the RFC does not coincide with any grid rule, and the grid rules cannot be used to draw a conclusion about disability or non-disability. Therefore, contrary to Plaintiff's argument, Rule 201.10 of the sedentary tables does not apply.

Hence, as required under the regulations and rulings, the Administrative Law Judge correctly decided this case based on vocational expert testimony given that Plaintiff's particular RFC did not correspond to a particular grid rule (Tr. 21-22, Finding Nos. 10-11). Thus, the Administrative Law Judge appropriately did not apply the sedentary grid rule 201.10.

Next, Plaintiff argues that the Administrative Law Judge should have found his carpal tunnel syndrome to be severe (Pl.'s Br. at 10-11). An impairment is "severe" if it significantly limits one's physical or mental ability to perform basic work activities. 20 C.F.R. Sections 404.1521(a), 416.921(a). If an impairment only minimally affects the ability to do work activities, it is not severe. The agency's rulings specifically state that "[t]he severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." *See,* SSR 85-28. A determination that an impairment is not severe requires a careful

8

evaluation of the medical findings that describe the impairment and an informed judgment about its limiting effects on the individual's physical and mental ability to perform basic work activities – "thus, an assessment of function is inherent in the medical evaluation process itself." *Id.; see, also* SSR 96-3p.

In this case, the Administrative Law Judge correctly determined that Plaintiff's RFC was not severe, as the objective evidence failed to support Plaintiff's contentions. Plaintiff bases his argument on a statement from Dr. Togliatti-Trickett that Plaintiff would have difficulty with handling objects due to pain in his hands and wrists bilaterally (Pl.'s Br. at 10, citing Tr. 281). Since there was a complete lack of objective findings showing that Plaintiff had any difficulty with the actual functioning of his hands/wrists, *see, infra,* it is obvious that Dr. Togliatti-Trickett was merely documenting Plaintiff's own subjective complaints. Plaintiff's own characterization of his hand symptoms is not credible, given, among other things, that he is documented on the record to have greatly exaggerated the severity of his carpal tunnel syndrome in asserting that it could lead to his death (Tr. 181). He stated in June 2010 that his "carpal tunnel was so bad that it would probably kill him," as his symptoms were much worse than the agency claims representative (Tr. 181). Based upon his subjective description of his systems, his credibility is questionable.

It was not error for the Administrative Law Judge to find Plaintiff's carpal tunnel syndrome non-severe when Dr. Togliatti-Trickett's examination showed that Plaintiff had:

- normal wrist and finger movement/strength;

- normal grasp, manipulation, pinch, and coordination of the left and right hands;

- no joint erythema, effusion, tenderness, or abnormalities of the hands and wrists;

- normal sensation with light touch and pin prick, except for over the right fifth digit and distally at the tips of the toes; and

9

• the ability to lift and carry objects up to forty pounds on occasion, without difficulty (Tr. 275, 277, 280-81).

In addition, evidence from Plaintiff's treating source, Dr. Turner, fails to support a finding that Plaintiff's carpal tunnel syndrome was as severe as he has described it. Plaintiff had eight visits with Dr. Turner from January 2010 through April 2011, and reported hand/wrist symptoms only once – in February 2011 (Tr. 296-97). One can assume that, if his hands had been symptomatic in any of the other months, that Plaintiff would have brought this to Dr. Turner's attention.

There are also other factors that support a finding of non-severe carpal tunnel syndrome. Plaintiff reported that his symptoms occurred while sleeping (Tr. 339), not during work hours, which indicates that his symptoms would not interfere with daytime use of his hands. At the administrative hearing, Plaintiff attested to right hand numbness, but not pain (Tr. 38-39). In regard to daily activities, Plaintiff reported engaging in a host of activities that involved the use of his hands, including washing dishes, dressing, bathing, shaving/hair care, preparing meals, and eating (Tr. 201-02). Furthermore, with respect to the issue of wearing wrist splints, the records shows that Plaintiff did not obtain them after his doctor prescribed them (Tr. 40, 337).

The Administrative Law Judge gave proper consideration to Plaintiff's carpal tunnel syndrome. He noted that a March 2010 EMG of both of Plaintiff's arms showed bilateral median neuropathies at or distal to the wrists, consistent with carpal tunnel syndrome, moderate in degree on the right and mild on the left (Tr. 15). The Administrative Law Judge further noted in Plaintiff's written report that his hands and legs went numb at night, and that lifting hurt his hands (Tr. 17). He also considered Plaintiff's hearing testimony, that Plaintiff testified he could sweep for fifteen minutes before his hands and toes went numb (Tr. 17). The Administrative Law Judge further noted that Plaintiff reported undergoing surgery on his wright wrist, but that he medical evidence did not show that

10

Plaintiff was currently having any difficulty from it (Tr. 15-16).

The Administrative Law Judge also discussed the results of Plaintiff's examination by Dr. Togliatti-Trickett, including her statement that Plaintiff would have difficulty handling objects due to pain in the hands and wrists bilaterally (Tr. 18). Thereafter, the Administrative Law Judge stated that he did not find support in the record for this opinion, as the treatment records in the file did not show that Plaintiff complained of restrictive bilateral hand pain to his physicians (Tr. 18). The Administrative Law Judge further noted that Plaintiff was not undergoing any treatment for this condition (Tr. 18). Therefore, he correctly concluded that Dr. Togliatti-Trickett's opinion appeared to be based on Plaintiff's subjective complaints, rather than on clinical findings or objective data (Tr. 18). Thus, based upon substantial evidence, the Administrative Law Judge correctly concluded that Plaintiff did not have severe carpal tunnel syndrome.

## VIII. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the Administrative Law Judge's decision. Based upon substantial evidence, the Administrative Law Judge made no legal errors, and substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work as disclosed by a representative sample of jobs that the vocational expert identified and that accounted for credible limitations as a result of his impairments. Therefore, he was not disabled, and, hence, he is not entitled to DIB and SSI.

Dated: December 31, 2013    */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE